Christopher LEIGE, Plaintiff,

v.

CAPITOL CHEVROLET, INC.,
et al., Defendants.

Civ. A. No. 94–A–1603–N.

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 16, 1995.

Gary E. Atchison, Julian L. McPhillips, Montgomery, AL, for plaintiff.

David E. Allred, Randall C. Morgan, Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

After receiving his right to sue letter from the Equal Employment Opportunity Commission, plaintiff Christopher Leige ("Leige") filed a complaint against the defendants, his previous employer Capitol Chevrolet, Inc. ("Capitol"), Frank McGough ("McGough"), the majority shareowner and Chief Executive Officer of Capitol, and Lester Salter ("Salter"), the general manager of Capitol, alleging discriminatory discharge in violation of Title VII, 42 U.S.C. §§ 2000e et seq.,[1] and the equal protection clause of the Fourteenth Amendment as applied through 42 U.S.C. § 1981.

Defendants have filed a motion for summary judgment and a motion to strike an affidavit proffered by Leige in support of his opposition to the motion for summary judgment. The court grants the motion to

---

**1.** Throughout Leige's complaint and his amended complaint, he refers to Title VII as 42 U.S.C. § 2002(e) et seq. Section 2002, which has no subsections, concerns Indian hospitals and facilities and clearly is irrelevant to this case. A typographical mistake in a citation is easily overlooked once or twice, but the consistent error of using the wrong citation for a ubiquitous act is not as easily ignored. It raises questions and casts doubt as to all other citations of authority. The court suggests to the plaintiff's attorney that he show more care in his citations in documents presented to the court.

strike,[2] and the court grants in part and denies in part the motion for summary judgment.

## FACTS

Leige, who is black, was employed as a salesperson with Capitol from May 1, 1991 to June 23, 1992 and from September of 1992 until his termination on June 17, 1994. At the time of his discharge Leige had the lowest average sales figure of any salesperson employed for the first five months of 1994. On the day Leige was discharged two other salespersons, both white, were also discharged allegedly because of their low sales figures. Capitol had a monthly sales quota of eight new or used cars at the time of Leige's discharge. During Leige's thirty-five months of employment with Capitol, he failed to meet his quota during thirty of the thirty-five months.[3] Leige alleges that he was never told during his orientation and training that a quota existed; however, Leige readily admits to knowing of the quotas.

## SUMMARY JUDGMENT STANDARD

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating to the court the basis for his motion and identifying those portions of the pleadings and evidentiary submissions which he believes show an absence of any genuine issue of material fact. *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 918 (11th Cir.1993). In a case in which the ultimate burden of persuasion at trial rests on the non-movant, the party seeking summary judgment can meet this standard either by submitting affirmative evi-

dence negating an essential element of the non-movant's claim, or by demonstrating that the non-movant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ The burden then shifts to the non-movant to make a showing sufficient to establish the existence of an essential element to his claims, and on which he bears the burden of proof at trial. *Id.* To satisfy this burden, the non-movant cannot rest on the pleadings, but must by affidavit or other appropriate means, set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

■ The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried, and if not, whether the movant is entitled to a judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir.1987). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant." *Hairston,* 9 F.3d at 919 (citations omitted). It is the substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ When the court considers a motion for summary judgment, it must avoid weighing conflicting evidence, making credibility determinations, and deciding material factual issues. *Hairston,* 9 F.3d at 919. All the evidence and the inferences from the underlying facts must be viewed in the light most favorable to the non-movant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990). *See also Matsushita Elec.*

---

2. The court entered an order on July 18, 1995, for the plaintiff to show cause on or before August 1, 1995, why the defendants' motion to strike the affidavit of Ivan Gonzales should not be granted. Plaintiff failed to respond.

3. When Leige began his employment with Capitol the quota was set at 12 cars per month. That quota was reduced to nine cars and later to eight

cars during the periods of Leige's employment. It is unclear from the evidence whether Leige failed to meet the quota of twelve, nine, or eight, as it was set, during the thirty months, or if Leige failed to meet the lowest quota of eight in all thirty months. Regardless, it is uncontroverted that Leige failed to meet the quota 85% of the time he was employed with Capitol.

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983). *See also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

## BURDENS OF PRODUCTION AND PERSUASION

■ *St. Mary's Honor Center v. Hicks*, — U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), is the most recent discussion by the Supreme Court of the complicated shifting of burdens and ultimate burdens placed on the employee and employer in employment discrimination cases. Initially the plaintiff must demonstrate his prima facie case which creates a presumption of discrimination. The prima facie case consists of the familiar *McDonnell Douglas*[4] elements: (1) plaintiff is a minority, (2) plaintiff was qualified for the position, (3) plaintiff was subject to an adverse employment decision, and (4) defendant replaced plaintiff with a non-minority. *St. Mary's*, — U.S. at ——, 113 S.Ct. at 2747.

■ After the plaintiff has demonstrated his prima facie case the burden of production is placed upon the defendant. The defendant must rebut the presumption by showing a legitimate, nondiscriminatory reason for the adverse employment decision. *Id.* Once the defendant meets its burden of production, the presumption of discrimination created by the prima facie case is eliminated. *Id.* The burden of persuasion remains with the plaintiff at all times. *Id.* The plaintiff must then show (1) that the reason given by the defendant is pretextual, *i.e.*, false, and (2) that the real reason for the adverse employment decision is discrimina-

tion. *Id.* at ——, 113 S.Ct. at 2752. "However, to withstand summary judgment, a plaintiff need only demonstrate that a genuine question exists as to whether the reason for the decision was intentional discrimination." *Howard v. BP Oil Co.*, 32 F.3d 520, 525 (11th Cir.1994).

## ANALYSIS

### Title VII

Leige is suing McGough and Salter in their individual capacities. Leige has no cause of action under Title VII, however, against McGough and Salter as individuals. *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991). Therefore, summary judgment on the Title VII claim is due to be granted for McGough and Salter.

Leige has the burden of establishing a prima facie case of discrimination. Because he is the nonmoving party in this motion for summary judgment, all facts and inferences will be viewed in his favor. Defendants contend that Leige failed to meet his prima facie case on two fronts.

■ First, defendants assert that Leige was not qualified for the position because of his poor sales record. However, his sales record reflects his performance as a salesperson, not his qualifications for the position of salesperson. Defendants do not cite any other reason why Leige was not qualified to be a salesperson.

Second, defendants contend that Leige has not presented a prima facie case because Leige has not alleged that a white person replaced him, the fourth *McDonnell Douglas* element of a prima facie case. Defendants assert, apparently uncontested, that Tommy Lewis, a black man, filled Leige's position.[5] Lewis was hired as a salesperson at least six weeks prior to Leige's discharge,[6] but defen-

---

4. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

5. Defendants state that Leige conceded that Lewis replaced him as salesperson. The page from Leige's deposition cited as having this admission was not admitted as part of the record before this

court. However, Leige does not contest the defendants' assertion.

6. Reviewing the sales records presented into evidence by the defendants, a person with the last name of Lewis appears on the charts beginning June 1993.

dants have asserted without opposition that Lewis was transferred to Capitol from a sister company under the same management as Capitol. Neither plaintiff nor defendant has presented any argument or law regarding whether a minority transferred to a sister company to fill a place vacated by a discharged minority meets the fourth element. The court need not decide this issue because the court finds that Leige has presented enough evidence of a prima facie case to survive a motion for summary judgment on this ground.

▇ Defendants contend that plaintiff has not shown that others similarly situated but not members of a protected class were treated differently. *See Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir.1984) (an alternative means of demonstrating a prima facie case). They point to the fact that on the same day Leige was fired two white salespersons were fired, also for not meeting their monthly quotas. Defendants state that Leige could have been fired simply for violating this work rule, *i.e.,* the monthly quota of eight cars. However, this argument undermines the defendants' contention that others similarly situated were treated in a like manner, because not all employees who failed to meet the monthly sales quota were fired. Defs' Mot. for Summ.J., App. 1 (sales records, Jan. 1991–May 1994). Leige has presented enough evidence to demonstrate a prima facie case. *See id.* ("We have consistently held that a plaintiff fired for misconduct makes out a prima facie case of discriminatory discharge if he shows that he is a member of a protected class, that he was qualified for the job from which he was fired, and 'that the misconduct for which [he] was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained.'") (citations omitted).

▇ Concluding that Leige has presented a prima facie case, the burden of production shifts to defendants. They state that Leige was discharged because of his poor sales record. This reason is a nondiscriminatory reason, and defendants have presented the sales records of all salespersons dating back

to 1991 as evidence supporting their reason. The records show that Leige averaged sales of 4.6 cars/month during 1991, 6.3 cars/month during 1992, 4.8 cars/month during 1993, and 4 cars/month during the first five months of 1994. The burden thus returns to Leige, who must present evidence both that the reason given by defendants is pretextual and that the real reason for his discharge was his race. The evidence presented by Leige to prove both need not be anything more than the evidence presented to prove his prima facie case, but the ultimate burden of proving discrimination remains with him at all times.

▇ The evidence regarding the sales records and monthly quotas is enough to raise issues of material fact as to the reason for Leige's discharge. Defendants state that Capitol has a sales quota of eight cars per month and that Leige was fired for not meeting that quota; however, not everyone who failed to meet that quota during the five month period in 1994 was discharged. A reasonable jury could believe Leige's claim of discrimination.[7]

### 42 U.S.C. § 1981

▇ A claim for disparate treatment pursuant to Title VII and pursuant to § 1981 has the same legal elements. *Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989); *Howard,* 32 F.3d at 524 n. 2. Thus Leige has presented a prima facie case based on the same reasoning discussed above. Unlike Title VII, however, individual employees can be held liable for discrimination under § 1981, thus Leige potentially has viable claims against McGough and Salter. Supervisors with the capacity to hire and fire or those who can recommend such decisions are subject to liability under § 1981. *See Faraca v. Clements,* 506 F.2d 956, 959 (5th Cir.) ("[A] third party's interference with those rights guaranteed under Sections 1981 and 1982 will subject such a person to personal liability."), *cert. denied,* 422 U.S. 1006, 95 S.Ct. 2627, 45 L.Ed.2d 669 (1975); *Clark v. City of Macon,* 860 F.Supp. 1545, 1553 (M.D.Ga.1994) ("Plaintiff can seek both compensatory and punitive damages against [the individual defendant] for her claims under §§ 1981 and

---

7. The court does not express any opinion as to    whether discrimination did occur.

1983.") (footnote omitted); *Coley v. M & M Mars, Inc.,* 461 F.Supp. 1073, 1076 (M.D.Ga. 1978) ("[T]he ... defendants may be held individually liable under § 1981 for discriminatory interference with plaintiff's contractual relationship with [the defendant corporation].").  Salter, as the general manager of Capitol, and McGough, as the CEO of Capitol, are alleged to have been in positions to make employment decisions at Capitol.  Additionally, Leige alleges that both defendants either engaged in discrimination or condoned the discriminatory acts of others.  It would be inappropriate to grant summary judgment for Salter and McGough on the § 1981 claim.

### CONCLUSION

Defendants' motion to strike the affidavit of Ivan Gonzales is due to be and hereby is GRANTED.  Defendants' motion for summary judgment is due to be and hereby is GRANTED as to the Title VII claim against Salter and McGough and DENIED in all other respects.

IT IS SO ORDERED.